892 F.2d 670
 58 Ed. Law Rep. 31
 Paul LANDSTROM and Jane Jensen, individually and as parents
and natural guardians of Ashley Landstrom and Lara
Landstrom, Plaintiffs-Appellants,
v.
ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES; David
Harris; Maggie Gruber; Marie Plozay; Mary
O'Boyle; Lorenz Petersen and Barrington
School District 220,
Defendants-Appellees.
 No. 88-3206.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 11, 1989.
Decided Jan. 9, 1990.
 
 Dennis Carlson (argued), Chicago, Ill., for plaintiffs-appellants.
 Jennifer A. Keller, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Civil Appeals Div., Chicago, Ill., for defendants-appellees Illinois Dept. of Children and Family Services, and Dave Harris.
 Edward M. Kay (argued), James O. Nolan, James T. Ferrini, Katherine G. Hill, Jeanette M. Bourey, Clausen, Miller, Gorman, Caffrey & Witous, John W. Norris, Byrdges, Riseborough, Morris, Franke & Miller, Chicago, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, and WOOD, Jr., and FLAUM, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 Plaintiffs, two grammar school students and their parents, brought suit under 42 U.S.C. § 1983 claiming that their first, fourth and fourteenth amendment rights were violated by various state and local school employees and entities during a child abuse investigation. Plaintiffs also asserted several pendent state law claims. After giving plaintiffs repeated opportunities to formulate and reformulate their arguments, the district court dismissed the plaintiffs' claims against the individual defendants under Fed.R.Civ.P. 12(b)(6), primarily on the ground that these defendants are entitled to qualified immunity. Landstrom v. Illinois Department of Children and Family Services, 699 F.Supp. 1270 (N.D.Ill.1988). Finding no just reason for delay, the district court entered final judgment as to these defendants pursuant to Fed.R.Civ.P. 54(b). Id. at 1283.[1] Plaintiffs appeal from the dismissal of these defendants and claims. For the reasons discussed below, we affirm.
 
 I.
 
 2
 Because this is an appeal of a granted motion to dismiss, we accept as true plaintiffs' well-pleaded allegations and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to plaintiffs. See Doe v. St. Joseph's Hospital, 788 F.2d 411, 414 (7th Cir.1986). Thus, the facts recounted here are those contained in the plaintiffs' fifth amended complaint and other pleadings, at least to the extent that we can parse plaintiffs' abstruse submissions.
 
 
 3
 Ashley and Lara Landstrom, both minor children, are students at Hough Street Grammar School in Barrington School District 220 ("District 220"), Cook County, Illinois. On March 17, 1987, Maggie Gruber, Ashley's first grade teacher, removed Ashley from her classroom because of a complaint by Ashley of "soreness ... in her anatomy in her rear end." Gruber took Ashley to another room within the school, wherein assembled school psychologist Lorenz Petersen, school nurse Mary O'Boyle, principal Marie Plozay, and, perhaps, Illinois Department of Children and Family Services ("IDCFS") social worker David O. Harris.[2] These individuals then conducted a verbal and physical examination of Ashley. In the course of this examination, Gruber held Ashley in her lap, and O'Boyle directed the child to remove her dress. Nurse O'Boyle then removed Ashley's underpants and examined the complained-of area.
 
 
 4
 The following day, Ashley's father Paul Landstrom informed principal Plozay that he disapproved of Ashley's treatment and he instructed Plozay not to allow similar conduct in the future. On March 19, 1987, Plozay removed Lara Landstrom, Ashley's older sister, from her classroom to question her. Plozay, Petersen and/or Harris and O'Boyle questioned Lara concerning her sister's complaint of soreness and her parents' conduct, but did not physically examine her in any way.
 
 
 5
 Some time thereafter, Harris contacted Paul Landstrom and his wife, Jane Jensen, who is also Ashley and Lara's mother. Harris insisted that Landstrom and Jensen ("Parents") and the children meet with him for further inquiry concerning possible parental child abuse. Parents allowed that any further questioning of the children could only be conducted in the presence of both of them and their attorney. Despite this conversation, Harris telephoned Parents' attorney on April 7, 1987, to inform him that he would be questioning the Landstrom children at the school that day with or without Parents or their attorney. Parents' attorney objected, but Harris nonetheless went to Hough Street Grammar School where he, Plozay and O'Boyle removed Ashley from her classroom. In the absence of Parents or their attorney, these individuals then questioned Ashley again about the suspected child abuse. During this April 7th questioning, which lasted thirty minutes to an hour, Plozay physically held Ashley and ignored Ashley's pleas to see her mother. No physical examination of Ashley was undertaken at that meeting.
 
 
 6
 Parents, as guardians of Ashley and Lara, first brought suit in April, 1987. Over the course of the following year, plaintiffs were given five additional opportunities to state their claims, culminating with their fifth amended complaint, the filing at issue in this appeal. A brief review of this tortured procedural history is instructive as to the context and disposition of the claims contained in the fifth amended complaint.
 
 
 7
 In May, 1987, after their initial complaint was struck, plaintiffs submitted an amended complaint. Defendants filed motions to dismiss this first amended complaint, which the district court granted in a detailed memorandum opinion and order on September 16, 1987. Judge Shadur afforded plaintiffs an opportunity to file anew and replead their claims "to eliminate their many flaws." When plaintiffs failed to file a second amended complaint before the deadline imposed by the court, the action was dismissed in its entirety. The following day, plaintiffs filed a "motion to reconsider" the dismissal of their first amended complaint. Judge Shadur generously viewed this motion as a timely pre-judgment motion which became an effective Fed.R.Civ.P. 59(e) motion upon entry of the dismissal order. He then denied the "extraordinarily diffuse" motion in an order dated October 23, 1987, but nonetheless vacated the dismissal of the entire action and granted plaintiffs additional time to file a second amended complaint.
 
 
 8
 Plaintiffs did indeed file a second amended complaint, followed one month later by a third amended complaint. Each time, Judge Shadur allowed plaintiffs to attempt to recast their arguments despite untimely and incomplete filings.[3] Defendants responded with motions to dismiss the third amended complaint, which were granted on March 3, 1988. Again, Judge Shadur gave plaintiffs another chance to reformulate their arguments. After seeking and receiving a further extension of time, plaintiffs took advantage of this opportunity and filed a fourth amended complaint, which they immediately sought to withdraw. Judge Shadur allowed the withdrawal and, in the same order, granted plaintiffs leave to file still a fifth amended complaint by May 2, 1988.
 
 
 9
 On May 6, four days past the deadline, plaintiffs moved for and were granted leave to file their fifth amended complaint instanter. In their fifth amended complaint Parents bring suit, both on behalf of their children and themselves individually, against David O. Harris (the IDCFS social worker), Maggie Gruber (Ashley's teacher), Marie Plozay (the school principal), Mary O'Boyle (the school nurse), and Lorenz Petersen (the school psychologist), all in their individual capacities ("individual defendants"); and District 220.[4] The complaint contains six counts. Count I asserts a 42 U.S.C. § 1983 ("s 1983") claim against all defendants, alleging the violation of Ashley and Lara's fourth and fourteenth amendment rights.[5] Count II asserts another § 1983 claim against Harris, Petersen, Plozay and District 220, alleging that these defendants violated Parents' first amendment rights by retaliating against Parents for their statements objecting to and criticizing defendants' actions.[6] Counts III through VI advance various pendent state law claims against individual defendants and District 220.
 
 
 10
 The defendants filed motions to dismiss the fifth amended complaint. All individual defendants argued that they are qualifiedly immune from plaintiffs' § 1983 claims and that plaintiffs had otherwise failed to state a claim. District 220 argued that the complaint failed to adequately allege the existence of an unconstitutional policy, pattern or practice by District 220. The defendants also raised various defenses to the pendent state claims, including state-law-based claims of immunity from liability, and failure to state a cause of action.
 
 
 11
 After again vacating a dismissal of the entire action and affording plaintiffs another chance, the district court granted individual defendants' latest motions to dismiss and entered final judgment in favor of these defendants. Landstrom, 699 F.Supp at 1282-83.[7] From this dismissal plaintiffs bring this appeal.II.
 
 
 12
 Plaintiffs raise four arguments which merit discussion.
 
 A.
 
 13
 First, plaintiffs challenge an early ruling by the district court granting defendants' motion to stay discovery pending the resolution of defendants' qualified immunity claims. They argue that "[h]ad limited discovery been permitted as to the alleged occurrence from those who would admit to having been directly involved or present, a more perfect, sufficient or perhaps more adequate and accurate complaint might have resulted in compliance with the court's insistence on evidentiary fact pleading on all matters alleged." They argue further that "[i]n the instant cause because of the extreme youth of the plaintiff children, there is a threshold need to confirm in detail with precision what exactly occurred and when." These arguments misconstrue the law of qualified immunity and the nature of the qualified immunity determination, and are without merit.
 
 
 14
 The doctrine of qualified immunity has been fashioned by the courts at least in part to "shield [public officers] from undue interference with their duties and from potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). With this purpose in mind, the Supreme Court has instructed that trial courts not only may but should decide the legal issue of qualified immunity in § 1983 cases before allowing discovery. Anderson v. Creighton, 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1986) ("One of the purposes of the Harlow qualified immunity standard is to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of effective government.... For this reason, we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation.") (quotations and citations omitted); Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); Harlow, 457 U.S. at 818, 102 S.Ct. at 2738 ("Until th[e] threshold immunity question is resolved, discovery should not be allowed."); see also Alvarado v. Picur, 859 F.2d 448, 450-51 (7th Cir.1988).
 
 
 15
 Of course, in some cases limited discovery may be necessary before a trial court could properly rule on a qualified immunity claim. See Anderson, 483 U.S. at 646-47, 107 S.Ct. at 3042-43 n. 6 (discussing situation in which court determines that official's alleged actions could not reasonably have been believed lawful and challenged official contends that he took actions different from those alleged by plaintiff). Because plaintiffs' claims here do not present such a case, Judge Shadur was clearly correct in staying discovery pending the resolution of the qualified immunity claims. Moreover, in ruling on individual defendants' properly raised qualified immunity claims based on the pleadings, Judge Shadur was not requiring "fact pleading." Indeed, as plaintiffs apparently fail to understand, the "precision" or even the sufficiency of their factual allegations is irrelevant to defendants' entitlement to qualified immunity. Rather, as will be discussed immediately below, qualified immunity turns on what is essentially a legal issue: the status of the legal norms allegedly violated by the defendants. In this case, the district court's decision to consider this issue before discovery was proper.
 
 B.
 
 16
 Second, plaintiffs challenge the merits of the district court's determination that individual defendants are entitled to qualified immunity from plaintiffs' count I fourth/fourteenth amendment claims. The standard for qualified immunity applicable here is well-recognized: government officials performing discretionary functions are shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. Further,
 
 
 17
 the right the official is alleged to have violated must have been 'clearly established' in a ... particularized ... sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 18
 Anderson, 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted). Following Harlow and Anderson, this court has outlined the following approach to qualified immunity questions:
 
 
 19
 Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law.
 
 
 20
 Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir.1988) (en banc), cert. denied, --- U.S. ----, 109 S.Ct. 497, 102 L.Ed.2d 534 (1989). Thus, the issue here is whether minor school children suspected of being victims of child abuse had, in March of 1987, a clearly established right to be free from questioning and visual examination of unexposed parts of their bodies of which state and local school employees reasonably should have known.
 
 
 21
 Applying the Harlow standard in the manner outlined in Rakovich, Judge Shadur answered this question in the negative: "plaintiffs have cited no cases (nor has this Court found any) even remotely suggesting [individual defendants'] actions violated plaintiffs' clearly established constitutional rights." Landstrom, 699 F.Supp. at 1274-75. He therefore ruled that all individual defendants enjoy qualified immunity, and granted these defendants' motion to dismiss count I under Fed.R.Civ.P. 12(b)(6).[8]
 
 
 22
 Plaintiffs argue that Judge Shadur's qualified immunity determination was erroneous for several reasons. First, they argue that defendants failed to make "an affirmative factual showing that [they] ... did not nor should not reasonably have objectively known at the time of the occurrence that [plaintiffs'] rights would be violated by examinations of nude female children of tender years." This argument misses the point completely. As stated above, the issue here is essentially one of law; neither a defendant claiming qualified immunity nor a plaintiff opposing it need make "an affirmative factual showing." Moreover, plaintiffs have erroneously shifted the burden on this issue to the defendants. As Judge Shadur correctly stated, see id. at 1274, it is plaintiffs' burden to show--or in this case, given the Rule 12(b)(6) context, to sufficiently plead--that the constitutional right was clearly established. Abel v. Miller, 824 F.2d 1522, 1534 (7th Cir.1987) (citing Davis v. Scherer, 468 U.S. 183, 197, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984)).
 
 
 23
 Plaintiffs' primary contention is that "school civil rights law" and "14th amendment rights ... in a school/student/official controversy" were "well established in the law" by the time of the actions alleged, and that therefore individual defendants are not entitled to qualified immunity. In support of this argument, plaintiffs point to various cases, including Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); Darryl H. v. Coler, 801 F.2d 893 (7th Cir.1986); Murray v. City of Chicago, 634 F.2d 365 (7th Cir.1980); and Picha v. Wielgos, 410 F.Supp. 1214 (N.D.Ill.1976).
 
 
 24
 A review of these cases, as well as all additional relevant case law, reveals that plaintiffs have not and cannot carry their burden of pleading the violation of a constitutional right that is "sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." Azeez v. Fairman, 795 F.2d 1296, 1301 (7th Cir.1986). Of course, neither this court nor the district court require, as plaintiffs charge, a prior case that is "precisely on all fours on the facts and law involved here." As we have previously stated, "[C]ases involving the exact fact pattern at bar are unnecessary," Lojuk v. Johnson, 770 F.2d 619, 628 (7th Cir.1985); see also Cleveland-Perdue v. Brutsche, 881 F.2d 427, 431 (7th Cir.1989) ("The presence of a controlling precedent is not ... a sine qua non of a finding that a particular right has been clearly established within the meaning of Harlow.") (citation omitted). Rather, what is required is a "sufficient consensus," based on all relevant case law, "indicating that the official's conduct was unlawful." Id. This is the standard that this court employs, and this is the approach that Judge Shadur employed. See, e.g., Landstrom, 699 F.Supp. at 1283 ("On plaintiffs' own refined and expanded version of the facts, all the case law teaches that plaintiffs could never overcome the individuals' claims to qualified immunity on the Section 1983 claims.").
 
 
 25
 Turning to the specific cases cited by plaintiffs, greatest reliance is placed on Darryl H. v. Coler, 801 F.2d 893 (7th Cir.1986). Darryl H. involved challenges to the IDCFS policy under which caseworkers can require children suspected of being victims of abuse or neglect to disrobe for physical examination. Plaintiffs there argued that this IDCFS procedure was an unreasonable search prohibited by the fourth amendment and a violation of the right to "family autonomy" protected by the fourteenth amendment. This court held that visual inspections by government officials of normally unexposed parts of a child's body do indeed implicate fourth amendment concerns, adding that "[t]here can be little debate that the nude physical examination is a significant intrusion into the child's privacy." Id. at 900-01. We also held that these examinations implicate "the closely related legitimate expectations of the parents ..., protected by the fourteenth amendment, that their familial relationship will not be subject to unwarranted state intrusion." Id. at 901. We went on to recognize, however, the "extraordinarily weighty" interests of the state in child abuse investigations. Largely because of these countervailing interests, we held in Darryl H. that probable cause or a warrant are not constitutionally required for visual inspection of the unexposed body of a suspected child abuse victim. Id. at 902. Moreover, we expressly declined to rule on the constitutionality of the examinations themselves, because we could not determine whether the guidelines under which they were conducted ensured "reasonableness" for fourth amendment purposes. Id. at 904, 908. And finally, because we found that the constitutional rights and issues involved were far from "clearly established," we held in Darryl H. that the individual defendants who conducted the nude examinations were entitled to qualified immunity. Id. at 908.
 
 
 26
 Contrary to plaintiffs' contentions, Darryl H. does not supply the particularized, clearly established right required for individual defendants to lose their qualified immunity. According to plaintiffs' allegations, individual defendants, acting in concern, twice seized Ashley (in that someone held her while they asked her questions), and once "seized" Lara (in that Lara was once called into the principal's office for questioning, though no allegation is made of physical restraint of Lara or of any physical examination of unexposed areas). Also, defendants once searched Ashley, in that they directed her to remove her dress and removed her underpants to examine her "rear end." These actions may or may not have been constitutional; what is clear is that Darryl H., decided six months prior, did not "establish" anything that mandates an answer either way. At most, Darryl H. established that these actions implicate fourth and fourteenth amendment interests, which must then be balanced against "extraordinarily weighty" state interests. What Darryl H. did not do, as the district court correctly stated, is set out a "factual roadmap of constitutionally violative conduct against which defendants here could have measured their own proposed course of conduct." Landstrom, 699 F.Supp. at 1274.
 
 
 27
 In Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), a case relied upon at length by plaintiffs, the Court declared that a mixed "objective" and "subjective" standard should be applied to determine whether school board members who were sued under § 1983 for wrongfully suspending two high school students were entitled to immunity. Id. 420 U.S. at 321-22, 95 S.Ct. at 1000-01.[9] Plaintiffs claim that Wood "made [it] clear that 14th amendment rights were recognized in a school/student/official controversy" and that "both the 14th amendment and the contours of applicable immunity were well settled by" Wood. Again, they completely miss the point. What plaintiffs attempt is the kind of over-generalization of the relevant legal norm that has been roundly rejected because it would make qualified immunity a completely hollow defense. See, e.g., Anderson, 483 U.S. at 639-40, 107 S.Ct. at 3038-39 (noting that, if the "clearly established" test were applied at the level of generality attempted here, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights"). Of course it was "established" by March, 1987, the time of the actions alleged here, that the fourteenth amendment applied to some activities of public school officials and that these officials had only a qualified immunity in such situations. The relevant inquiry, however, is whether the case law had established by that time a particularized right which these plaintiffs can claim and of which these defendants should have been aware, and Wood helps advance this inquiry not at all.
 
 
 28
 The other cases cited by plaintiffs are similarly unavailing. In Murray v. City of Chicago, 634 F.2d 365 (7th Cir.1980), we considered a constitutional challenge to the arrest, detention and nude strip search of an adult female by police officers who were holding her pursuant to an invalid arrest warrant. As the context there was entirely different from the case at bar, Murray is irrelevant. In Picha v. Wielgos, 410 F.Supp. 1214 (N.D.Ill.1976), the court considered the constitutional claim of a junior high school student who had been searched by various school employees who were working with police because they suspected her of possessing illegal drugs. Employing the old objective-subjective hybrid test from Wood, then-District Judge Flaum held that plaintiff's claim satisfied the objective component:
 
 
 29
 The law was settled, that when Renee Picha was searched, that she had a constitutional right not to be searched by school officials who were in contact with the police unless the extent of the intrusion occasioned by the search was justified in terms of the state interest of maintaining the order, discipline, safety, supervision, and education of the students within the school.
 
 
 30
 Id. at 1221 (emphasis added). Because the context differed in Picha (the school officials there were acting as investigative agents of the police), and because the officials in the case at bar could reasonably have believed that the italicized passage above applied to their actions, Picha, too, is unavailing.
 
 
 31
 Furthermore, our review of relevant case law not cited by plaintiffs confirms the absence of a relevant, clearly established legal norm. In fact, the Eighth, Fifth and Second Circuits have specifically found public employees engaged in child abuse investigations entitled to qualified immunity from § 1983 claims similar to plaintiffs' count I claims in the face of substantially greater intrusions than at issue here. Doe v. Hennepin, 858 F.2d 1325, 1329-30 (8th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3161, 104 L.Ed.2d 1023 (1989) (absent showing of "malice or improper motives," county welfare agency officials entitled to qualified immunity from damages claims arising out of the removal of the plaintiffs' children from their home for sixteen days due to suspected sexual abuse); Hodorowski v. Ray, 844 F.2d 1210, 1217-18 (5th Cir.1988) (state child protective service workers entitled to qualified immunity from claims arising from the temporary removal of children from parents' home due to suspected child abuse); Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987) (state officers who took two children into protective custody during child abuse investigation are entitled to qualified immunity because "it was objectively reasonable for them to believe they violated no federal rights when they seized the children").
 
 
 32
 Thus, Judge Shadur was correct in concluding that plaintiffs have failed to "place the actions taken as to either child outside any 'clearly established' constitutional norm," Landstrom, 699 F.Supp. at 1283, and in dismissing count I as to the individual defendants accordingly.
 
 C.
 
 33
 Third, plaintiffs challenge Judge Shadur's determination that count II substantively failed to state a first amendment claim against any of the defendants. See Landstrom, 699 F.Supp. at 1277-80. What they fail to mention is that Judge Shadur also dismissed all count II claims against Harris, Petersen and Plozay (the individual defendants named in that count) on the alternative ground that these defendants are entitled to qualified immunity because the conduct alleged does not violate any clearly established first amendment rights. Id. at 1280. Because plaintiffs have not expressly challenged the district court's qualified immunity determination as to count II, they have waived any claim of error in that ruling. See Sere v. Bd. of Trustees of Univ. of Illinois, 852 F.2d 285, 287-88 (7th Cir.1988) (discussing litigants' duties under Fed.R.App.P. 28(a)(4), stating "We consistently and evenhandedly have applied the waiver doctrine when appellants have failed to raise an issue in their opening brief," and collecting cases).[10]
 
 
 34
 Thus, even if we were to reverse the district court's substantive dismissal of count II, count II would remain dismissed as to Harris, Petersen and Plozay because they have been determined qualifiedly immune. Plaintiffs' challenge to the substantive dismissal of count II only remains relevant, then, as against District 220, since the qualified immunity-based dismissal of count II does not apply to that defendant.
 
 
 35
 Plaintiffs' count II allegations against District 220 boil down to the assertion that District 220, through its employees Petersen and Plozay, unconstitutionally retaliated against Parents by questioning their children after Parents had instructed Plozay to "cease and desist from further inquiry." For this claim to survive District 220's motion to dismiss, plaintiffs must have adequately alleged statements which, among other things, "touch upon a matter of public concern" and thus implicate the first amendment. Cf. Connick v. Meyers, 461 U.S. 138, 146-48, 103 S.Ct. 1684, 1689-91, 75 L.Ed.2d 708 (1983); Phares v. Gustafsson, 856 F.2d 1003, 1008-09 (7th Cir.1988). Analogizing to the public employment context, Judge Shadur engaged in a thorough and detailed discussion of this issue in light of relevant first amendment cases and principles, see Landstrom, 699 F.Supp. at 1277-80, and concluded that "Parents' 'speech,' involving as it did their purely personal complaints, cannot support their purported First Amendment claim in Count II." Id. at 1280. We agree.
 
 
 36
 Connick tells us that whether speech touches on a matter of public concern depends upon the content, form and context of the statements. 461 U.S. at 146-48, 103 S.Ct. at 1689-91. Parents' statements here were basically "we don't approve of your examination of Ashley" and "don't do it again." These statements were privately and directly communicated to the District 220 employees involved. Further, Parents' purpose in making these statements was obviously to prevent like examinations of their children in the future, not to "bring wrongdoing to light." See Linhart v. Glatfelter, 771 F.2d 1004, 1010 (7th Cir.1985). Thus, Parents' statements as alleged fail as a matter of law to relate to a matter of public concern. Count II merely represents, as Judge Shadur noted, an attempt to recast plaintiffs' count I challenge to the reasonableness of defendants' conduct "cloaked in First Amendment guise," Landstrom, 699 F.Supp. at 1280, and was therefore properly dismissed.[11]
 
 D.
 
 37
 Fourth, plaintiffs challenge the district court's disposition of their pendent state law claims. After dismissing entirely the individual defendants, Judge Shadur likewise dismissed all of plaintiffs' pendent state law claims against these defendants, citing United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which teaches that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the [pendent] state claims should be dismissed as well." Id. 383 U.S. at 726, 86 S.Ct. at 1139 (citation omitted). Judge Shadur added that
 
 
 38
 to apply the "embattled concept" of pendent-party jurisdiction to keep [individual] defendants in this lawsuit on some "common nucleus of operative fact" notion ... would subvert the basic principle that qualified immunity is intended to free public officials from being sued and having their work disrupted, as well as from ultimate liability (citing Harlow ).
 
 
 39
 Landstrom, 699 F.Supp. at 1280 (additional citation omitted).
 
 
 40
 Because plaintiffs' count I claim against District 220 survived, however,[12] the court retained jurisdiction as to that defendant, and Judge Shadur went on to examine whether any of the pendent claims contained in counts III through VI contained legally sufficient allegations against that defendant. He concluded that only the portion of count IV which alleged intentional infliction of emotional distress against District 220 for the "nude search" of Ashley stated a claim, and thus Judge Shadur dismissed all other pendent claims in their entirety. Landstrom, 699 F.Supp. at 1281-82.
 
 
 41
 Pendent jurisdiction is a power which the district court, in the exercise of its sound discretion, may chose to grant; it is not a plaintiff's right. Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139. When a district court, as here, refuses to exercise this power, we will reverse only upon a showing of abuse of discretion. Zabkowicz v. West Bend Co., Div. Dart Indus., 789 F.2d 540, 546 (7th Cir.1986); accord Disher v. Information Resources, Inc., 873 F.2d 136, 140 (7th Cir.1989) (decision by district court to relinquish jurisdiction over pendent claims "will be reversed only in extraordinary circumstances"); Huffman v. Hains, 865 F.2d 920, 923 (7th Cir.1989) ("[W]e have described the district court's discretion to relinquish pendent jurisdiction as 'almost unreviewable.' This is especially so when all federal claims have dropped from the case before trial.") (emphasis in original) (citing Graf v. Elgin, Joliet and Eastern Ry. Co., 790 F.2d 1341, 1347 (7th Cir.1986)).
 
 
 42
 Plaintiffs have failed to show that Judge Shadur abused his discretion in dismissing their pendent claims, or that their claims present "extraordinary circumstances." In fact, they fail to even address the propriety of the district court's decision. Instead, plaintiffs' arguments amount to a repeat of their specific, unsuccessful merits arguments as to each pendent claim. We hold, therefore, that the district court was well within its discretion in dismissing plaintiffs' pendent claims.
 
 III.
 
 43
 Qualified immunity has been fashioned to protect public officers from the needless harassment and expense that can result from precisely the kind of meritless § 1983 claims brought by plaintiffs here. Judge Shadur gave plaintiffs ample opportunity to devise a meritorious constitutional claim that would strip individual defendants of this immunity. They have failed; indeed, as a review of the case law should have told them, they were destined to fail because of the status of the relevant legal norms at the time of the alleged violations. They have also failed substantively to state a first amendment claim against any of the defendants, and to show that the district court abused its discretion in disposing of their pendent state law claims. Thus, for the reasons discussed above, the district court's dismissal of plaintiffs' claims is
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 Although the district court did not memorialize its Rule 54(b) certification with a separate Rule 58 document, this court nonetheless has jurisdiction over this appeal, as the district court's opinion and order was otherwise an appealable final decision under 28 U.S.C. § 1291. See Real Estate Data, Inc. v. Sidwell, Co., 809 F.2d 366, 370 n. 4 (7th Cir.1987)
 
 
 [2]
 "Perhaps" is used because paragraph 19 of plaintiffs' fifth amended complaint states that Harris was present at the March 17th meeting "on inference only." Just as the district court gave plaintiffs the "benefit of the doubt," see Landstrom, 699 F.Supp. at 1272 n. 3, we assume Harris was present. Similarly, we will throughout assume as true plaintiffs' assertions, however equivocal, as to who was present when and who did what
 
 
 [3]
 The second amended complaint was not accompanied by a motion for leave to amend, see Fed.R.Civ.P. 15(a) ("[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party ..."), and the third amended complaint, this time accompanied by a motion for leave to file instanter, was filed sixteen days past the deadline imposed by the court
 
 
 [4]
 Plaintiffs' first two, ill-fated complaints named as defendants the IDCFS, David Harris (in both his official and individual capacities), and District 220 and its employees Gruber, Plozay and O'Boyle. The district court subsequently held that the IDCFS and Harris in his official capacity were immune from suit under the eleventh amendment, and dismissed the claims against these defendants. Thus, by the filing of the third amended complaint, these defendants had disappeared from plaintiffs' list. Much later, in their fifth amended complaint, plaintiffs added Petersen, which accounts for the current group of defendants
 
 
 [5]
 Specifically, paragraph 32 of plaintiffs' complaint reads as follows:
 The conduct of the defendants in the three detentions, unwarranted restraints and interrogations of the two minor children and the denuded body search of Ashley Landstrom violated the civil rights of these children to be free from the use of unnecessary and unjustified use of [sic] force upon them, the wilful or intentional deprivation of the care, security and sustenance of their natural parents by agents of the government, to be free from improper detention or arrest and imprisonment, and from unreasonable search and seizure by agents, employees and servants of the government of any state of [sic] local governmental authority and the right to be represented by counsel in any attempt to infringe upon any of the foregoing civil rights which they enjoy by reason of the due process clause of the 14th Amendment to the United States Constitution and the Fourth Amendment thereto.
 
 
 [6]
 Again, it is instructive to examine plaintiffs' actual allegations:
 [D]efendants ... sought to punish ... plaintiffs and retaliate for the perceived unjustified, but nevertheless proper and necessary, intrusion into the decisions and conduct of these defendants with regard to the plaintiffs' children. Said defendants chose to punish plaintiffs' proper exercise of their freedom of speech by conducting further interrogations of said children into the affairs of the plaintiffs in order to cow them into submission to defendants' personal whims, desires, lust for power and control, to secure their own continued employment positions and for their own self agrandizement [sic].
 
 
 [7]
 Although it dismissed the individual defendants entirely, the district court denied District 220's motion to dismiss the count I fourth/fourteenth amendment claim against it. Id. at 1275-77. District 220 has not challenged this ruling, nor the district court's determination that the plaintiffs' count I allegations against it satisfy the requirements of Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), and Strauss v. City of Chicago, 760 F.2d 765 (7th Cir.1985). Landstrom, 699 F.Supp. at 1276-77. Thus, we will not disturb those rulings, and the case continues as to plaintiffs' surviving claims
 
 
 [8]
 As Judge Shadur noted, see id. at 1275 n. 12, the context of the qualified immunity determination in this case is somewhat unusual; qualified immunity, as an affirmative defense, ordinarily leads to summary judgment under Fed.R.Civ.P. 56, not dismissal under Fed.R.Civ.P. 12(b)(6). This unusual procedural posture is not problematic, however, because the plaintiffs' initial pleadings themselves, taken as true, fail to adequately allege the violation of any clearly established right. Thus, dismissal for failure to state a claim upon which relief can be granted is proper without additional fact development
 
 
 [9]
 We note that plaintiffs incorrectly assert that "the Wood conceptualization of the [qualified immunity] doctrine was adopted in Harlow. In fact, the Court in Harlow substantially modified the qualified immunity inquiry, changing to an "objective legal reasonableness" test. See, e.g., Polenz v. Parrott, 883 F.2d 551, 553 (7th Cir.1989) ("In Harlow, the Supreme Court eliminated the subjective element from the qualified immunity analysis ..."); Rakovich, 850 F.2d at 1205 (Wood 's objective-subjective hybrid approach is "the wrong test because, with its 1982 Harlow decision, the Supreme Court abolished the subjective element of the test.")
 
 
 [10]
 Plaintiffs contend in their reply brief that waiver should not result regarding Judge Shadur's count II qualified immunity determination because "both sides have argued immunity generally throughout their briefs in connection with other civil rights." Wrong. As plaintiffs should know, entitlement to qualified immunity from a § 1983 first amendment claim depends upon the status of legal norms entirely different from the legal norms relevant to a fourth/fourteenth amendment claim. Plaintiffs are thus fundamentally in error when they claim that the arguments and authorities they offer regarding individual defendant's entitlement to qualified immunity from their count I claims "apply to immunities claimed for violations of constitutionally guaranteed rights whether under ... the 1st, 4th [or] 14th Amendments."
 
 
 [11]
 Because we agree with the district court that the speech at issue here does not survive the threshold "matter of public concern" inquiry, we need not address defendants' argument that count II fails as a matter of law to adequately allege that "retaliation" motivated their conduct. See Rakovich, 850 F.2d at 1197-99
 
 
 [12]
 See supra note 7