**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 1, 2006[*]
Decided February 7, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

No. 05-2833

| | |
|---|---|
| MICHAEL L. KATHREIN,<br>    *Plaintiff-Appellant*,<br><br>    v.<br><br>BRIGID MCGRATH, et al.,<br>    *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>No. 04 C 7324<br><br>David H. Coar,<br>*Judge*. |

Nos. 05-2907 & 05-3523

| | |
|---|---|
| MICHAEL L. KATHREIN,<br>    *Plaintiff-Appellant*,<br><br>    v.<br><br>R.J. SIEGEL,<br>    *Defendant-Appellee*. | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>No. 1:05–cv–01718<br><br>Milton I. Shadur,<br>*Judge*. |

---

[*] After examining the briefs and records, we have concluded that oral argument is unnecessary. Thus, these appeals are submitted on the briefs and records. *See* Fed. R. App. P. 34(a)(2).

# O R D E R

These consolidated appeals arise out of a dispute that moved from cyberspace to the courts of Illinois and finally landed in federal court.[1]  Michael Kathrein created an internet website known as "michaelmonar.com."  Outraged at the website's content, Michael Monar sued Kathrein in the Circuit Court of Cook County.  To put the dispute in context, Monar is married to Kathrein's ex-wife, and in the midst of a contentious divorce and child-custody dispute among Kathrein, Monar, and Kathrein's ex-wife, Monar discovered the existence of michaelmonar.com.  The website included sexual and pornographic depictions with references to Monar, and at times automatically redirected those who accessed it to other pornographic websites.  Monar, who runs a consulting firm, had tried negotiating with Kathrein for rights to the domain name, but, having no luck, he brought his state lawsuit alleging that Kathrein had injured his business and reputation.

During that litigation the state court enjoined Kathrein from posting pornographic material on michaelmonar.com or creating redirections to other pornographic websites.  Monar later suspected that, despite this injunction, Kathrein had added another redirection of michaelmonar.com to a pornographic search engine, and in April 2004 he filed a motion seeking to hold Kathrein in contempt for violating the injunction.  Kathrein responded that, indeed, he had inserted a command that would redirect users of michaelmonar.com, but he defended his action with the explanation that the programmed redirection would occur only after an extremely long delay, some three hundred billion seconds.  Monar, skeptical that there was such a delay feature, then sought and received an order permitting immediate inspection of Kathrein's computer by a forensic computer expert.

The expert Monar retained is R.J. Siegel, the defendant in one of the federal actions underlying these appeals.  Pursuant to the state court's order, Siegel examined the computer Kathrein produced but concluded that it was not the one used as the server for the website.  Kathrein then admitted switching computers and claimed that he left the old computer outside his office and did not know who took it. Both parties then moved for sanctions; Kathrein asserted that Siegel violated the court's order by examining, altering, and copying data from his computer that was

---

[1]  In an order dated August 31, 2005, we consolidated nos. 05-2907 and 05-3523 for purposes of briefing and disposition.  We have also consolidated no. 05-2833 for decision.

beyond the scope of the order, while Monar sought to recover the expense of hiring Siegel to inspect what turned out to be the wrong computer.

These cross-motions for sanctions were still pending when Kathrein filed his first action in federal court. In that suit under 42 U.S.C. § 1983, which was filed in 2004 and assigned to Judge Coar, Kathrein claimed that Monar, his attorneys, and the judge assigned to Monar's lawsuit in state court were conspiring to deprive him of federally protected rights by assuring that he did not get a fair trial in that ongoing action. That contention prompted the state-court judge, Brigid McGrath, to recuse herself, and Monar's lawsuit against Kathrein was then reassigned to another judge, Paddy McNamara. Judge McNamara considered the cross-motions for sanctions in December 2004. The court denied Kathrein's motion that same month but in March 2005, after seeking clarification of Siegel's fee, granted Monar's motion and awarded him $10,288 to cover the expense of the expert's wasted investigation. Meanwhile, Judge McNamara in January 2005 also conducted a hearing on, and granted, Monar's motion to hold Kathrein in contempt for violating the injunction against redirecting users of michaelmonar.com to another website.

Kathrein's response to these rulings was swift. Seven days after being held in contempt, he amended the federal action pending before Judge Coar to include Judge McNamara as a defendant. Then in March, after he was ordered to reimburse Monar for Siegel's fee, Kathrein filed a second federal lawsuit, this one assigned to Judge Shadur. Kathrein principally claimed that Siegel, the lone defendant, had fraudulently inflated his bill to Monar, and he demanded that the court grant him access to a federal grand jury so that he could present evidence of Siegel's alleged "mail fraud." *See* 18 U.S.C. § 1341. Kathrein further claimed that Siegel had violated two federal statutes, the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1001-1038, and the Stored Communications Act, *id.* §§ 2701-2712, by inspecting and copying files on Kathrein's computer that were outside the scope of the state court's authorization. In addition to filing this federal lawsuit, Kathrein also took an immediate appeal of the sanctions order, which as far as we can tell, is still pending in the Illinois appellate court. Likewise, it appears that Monar's state lawsuit against Kathrein remains unresolved.

The two federal lawsuits, however, have been dismissed. In the first, Kathrein recognized that the two state-court judges were absolutely immune, but he sought damages against Monar and his lawyers. And, just as he did in the federal action against Siegel, Kathrein also sought access to a federal grand jury to investigate possible criminal conduct by all of the defendants, including the judges. In their motion to dismiss, the defendants asked Judge Coar to abstain under *Younger v. Harris*, 401 U.S. 37 (1971). The court, reasoning that *Younger* did not apply but that

"the doctrine of comity" underlying that decision did, dismissed the action.  The court also explained that Kathrein's request for a grand jury investigation should be directed to the United States attorney, not the court.  Kathrein filed an appeal, which we docketed as case no. 05-2833.

As for the second federal suit, Siegel characterized the action as a disguised appeal of the sanctions awarded in state court and urged that it be dismissed under the *Rooker-Feldman* doctrine.  *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Judge Shadur initially questioned whether *Rooker-Feldman* applied in light of the Supreme Court's decision in *Exxon Mobil v. Saudi Basic Industries Corporation*, 125 S.Ct. 1517 (2005), but eventually satisfied himself that it did and granted Siegel's motion to dismiss for lack of jurisdiction.  We have docketed Kathrein's appeal of that dismissal as case no. 05-2907.  The district court also ordered Kathrein to pay $20,228 to Siegel for his attorneys' fees in defending a frivolous lawsuit as a sanction under Federal Rule of Civil Procedure 11, and we have docketed Kathrein's appeal of that order as case no. 05-3523.

We start with Judge Shadur's dismissal of the suit against Siegel and related award of Rule 11 sanctions.  Kathrein contends that the district court (1) was prejudiced against him and thus denied him a fair hearing; (2) misapplied *Rooker-Feldman*; (3) erred in refusing to order a grand jury investigation of Siegel for mail fraud; and (4) abused its discretion in sanctioning him under Rule 11.

As evidence that Judge Shadur was prejudiced against him, Kathrein relates comments allegedly made to him by two unknown attorneys who happened to be leaving Judge Shadur's courtroom as Kathrein entered for the first time.  He was told, he says, that the judge "predetermines cases" before hearing them.  Kathrein also points to Judge Shadur's later observation that Kathrein may be a "wise guy" and that his conduct in suing the state judges (in the lawsuit before Judge Coar) was "unpardonable."  Siegel argues, however, that Kathrein has waived any argument about the district court's purported bias because he failed to raise the issue in the district court.  We agree.

Parties who believe that the judge assigned to their case is not impartial, *see* 28 U.S.C. § 455(a), must raise the concern to the district court first.  *See United States v. Ruzzano*, 247 F.3d 688, 694 (7th Cir. 2001); *United States v. Mathison*, 157 F.3d 541, 545-46 (8th Cir. 1998); *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (applying rule in civil case).  Kathrein never did.  Even though he later petitioned this court for a writ of mandamus seeking Judge Shadur's removal from his case—albeit nearly three months after the judge had granted the defendant's

motion to dismiss—it is Kathrein's failure to raise the issue before the district court that dooms his argument. *See Ruzzano*, 247 F.3d at 694. And although we have acknowledged the possibility that litigants may excuse their failure to raise recusal issues in the district court by showing that the bias was undiscoverable until the proceedings had ended, Kathrein offers no such excuse. *See United States v. Ward,* 211 F.3d 356, 364 (7th Cir. 2000) (expressing doubt that criminal defendant waived argument concerning the trial judge's alleged bias by failing to seek recusal before sentencing, since defendant did not learn of asserted basis for recusal until after trial); *Ruzzano*, 247 F.3d at 694 (recognizing that "extraordinary circumstances" might excuse failure to seek refusal in timely manner). In fact, Kathrein would have no such excuse because most of the "incidents of bias" that he complains about happened before the dismissal of his complaint, or at least before Judge Shadur awarded sanctions. In any event, we are not convinced that Judge Shadur's comments or the speculation of attorneys about a particular judge's methodology establish the "deep–seated favoritism or antagonism" that would constitute judicial bias. *See Liteky v. United States*, 510 U.S. 540, 555 (1994); *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002); *In re Huntington Commons Assocs.*, 21 F.3d 157, 158-59 (7th Cir. 1994).

Kathrein is correct, however, that Judge Shadur erred in dismissing the suit against Siegel under *Rooker-Feldman*. That doctrine applies only where a litigant seeks to overturn a state-court judgment, and Kathrein does not seek to do so. The district court saw Kathrein's claim that Siegel engaged in fraudulent billing as an attempt to overturn the state-court's imposition of sanctions, and his claims under the Computer Fraud and Abuse Act and Stored Communications Act as an attempt to overturn the denial of Kathrein's motion to sanction Siegel for exceeding the scope of his search authorization. But we have recognized the difference between a claim that seeks to overturn a state judgment directly and one that is independent because it alleges a prior injury that a state court failed to remedy. *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004); *Brokaw v. Weaver*, 305 F.3d 660, 664-65 (7th Cir. 2002); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999). And Kathrein's claim that Siegel drafted a fraudulent bill fits into the latter category because the bill was totaled before the state court relied on it in calculating an appropriate sanction. Likewise, Kathrein's claims that Siegel violated federal statutes by performing an inspection beyond the scope of his authority alleges injuries that occurred, if at all, prior to the state court's denial of Kathrein's motion for sanctions against Siegel. Thus, while a judgment in federal court for Kathrein on these claims might undermine the state court's rulings on the cross-motions for sanctions, *Rooker-Feldman* is nevertheless inapplicable. *See GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) (recognizing that federal

jurisdiction exists even over an independent claim that incidentally denies a legal conclusion that a state court has reached).

Moreover, even if we could say that Kathrein truly seeks to overturn state-court rulings, we still doubt that dismissal under *Rooker-Feldman* would be appropriate because the state-court proceedings have not ended. In *Exxon Mobil*, the Supreme Court limited *Rooker-Feldman* to situations where the losing party in state court files suit in federal court after "state proceedings [have] ended." 125 S.Ct. at 1521-22, 1526. One circuit has interpreted *Exxon Mobil* to mean that state proceedings will have "ended" when the highest court capable of review has considered the state decision, or where no party to the case seeks further action. *See Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005). Under that logic, it is too early in the state proceedings for the district court to have dismissed under *Rooker-Feldman* because Kathrein's appeal of the sanctions order was pending at the time he commenced his federal suit and the order denying Kathrein's motion for sanctions against Siegel was not severed from the case for immediate appeal and cannot be appealed until the underlying case is complete.

Still, while we disagree with the district court's application of the *Rooker-Feldman* doctrine, we conclude that dismissal was the correct outcome. To the extent his federal suit concerns Siegel's bill to Monar, Kathrein cannot maintain a claim for fraudulent billing against Siegel under Illinois law because he lacks standing to challenge the amount of a bill between Siegel and his client. (Kathrein and Siegel are from different states, and while it appears unlikely that the $75,000 threshold could be met, *see* 28 U.S.C. § 1332(a), we assume that it is.) Under Illinois law, a cause of action based on contract may be brought only by a party to that contract, someone in privity with a party, or a third-party beneficiary. *Kaplan v. Shure Bros., Inc.*, 153 F.3d 413, 418 & n.3 (7th Cir. 1998) (applying Illinois law). The state court's order directing Kathrein to pay Monar the amount of Siegel's fees made Kathrein none of these. The state court simply used the amount of Siegel's fees as a reference in determining what value to place on the costs of Kathrein's obfuscatory litigation tactics. Moreover, though Kathrein frequently has invoked the federal mail fraud statute in this litigation, *see* 18 U.S.C. § 1341, there is no private right of action under that criminal provision. *See Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999) (joining Fifth and Sixth Circuits in finding no private cause of action for mail fraud). Finally, despite the lengthy discussions in his brief about his claim of fraud and the purported need for a grand jury investigation, Kathrein nowhere disputes Siegel's argument that he fails to state a claim under

either the Computer Fraud and Abuse Act or the Stored Communications Act.[2]  We thus uphold the dismissal on the ground that Kathrein failed to state a claim, and for that reason modify the judgment to reflect that the dismissal is with prejudice.  *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (explaining that we may affirm district court's dismissal on any adequate ground found in record).

Kathrein, then, is left with an argument that the district court's sanction in the amount of $20,338 was inappropriate.  In light of our conclusion that *Rooker-Feldman* does not apply, and respecting the district court's role in determining Rule 11 sanctions in the first instance, *see Johnson v. Cherry*, 422 F.3d 540, 553 (7th Cir. 2005), we vacate and remand the sanctions award for the district court to determine whether sanctions are warranted for Kathrein's filing of a complaint that fails to state a claim.

Before leaving Kathrein's suit against Siegel, we address an argument he makes both here and in his appeal from the dismissal of his other federal complaint. In both federal actions Kathrein sought and was denied an order compelling a federal grand jury to investigate alleged crimes committed by the various defendants.  In challenging those denials, Kathrein persists with his frivolous contention that he is entitled to appear before a grand jury to present his allegations. *See Korman v. United States*, 486 F.2d 926, 933 (7th Cir. 1973) (holding that authority to convene federal grand jury is vested in district court); *cf. Cook v. Smith*, 834 P.2d 418, 420-21 (N.M. 1992) (recognizing New Mexico's procedure permitting citizens to petition for convening a grand jury as rare).  Kathrein admits that the goal of his proposed investigation is to lead to the prosecution of the individuals that he has sued, but a private citizen lacks standing to demand the prosecution of

---

[2]  The Computer Fraud and Abuse Act provides a civil remedy for one who suffers damage by reason of a violation of the Act.  18 U.S.C. § 1030(g).  A violation can occur, however, only where there is damage to a "protected computer."  *Id.* § 1030(a)(5)(A)(i).  A protected computer is one used exclusively by a financial institution or the United States, or that is used in interstate commerce.  *Id.* § 1030(e)(2).  The Stored Communications Act also provides a civil remedy, but a violation occurs only as a consequence of accessing a "facility through which an electronic communication service is provided."  *Id.* § 2701(a).  An "electronic communication service" is one that provides the ability to send or receive signals that affect interstate commerce.  *Id.* § 2510(15), (12); *see* 18 U.S.C. § 2711 (making definitions in § 2510 applicable to the Stored Communications Act).

another.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Johnson v. City of Evanston, Ill.*, 250 F.3d 560, 563 (7th Cir. 2001).

This brings us to Kathrein's action under § 1983 against Monar, his lawyers, and the two state judges.  In his opening brief Kathrein asserts that Judge Coar, by dismissing the complaint, deprived him of his Seventh Amendment right to a jury trial.  His brief, however, includes nothing more than a short history of the amendment and does not address the reason given by the district court for the dismissal.  The defendants accordingly contend that Kathrein has waived any challenge to the dismissal, although they also go on to diligently anticipate and respond to arguments that Kathrein might have made but did not.  In his reply brief Kathrein finally addresses the points the defendants flagged for him (his reply brief is more than twice the length of his opening brief), but this comes too late.  *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005) (holding that issues raised for first time in reply briefs are waived).  We thus affirm the dismissal.  *See Landstrom v. Ill. Dept. of Children and Family Servs.*, 892 F.2d 670, 678 (7th Cir. 1990) (noting that failure to challenge district court's holding waives claim of error in that ruling).

Accordingly, in case no. 05-2907 we MODIFY the dismissal to be with prejudice, and, as modified, AFFIRM the judgment of the district court.  In case no. 05-3523 we VACATE the award of Rule 11 sanctions and REMAND for the district court to reconsider the propriety of sanctions in light of our conclusion that Kathrein's complaint against Siegel fails to state a claim.  Finally, in case no. 05-2833 we AFFIRM the judgment dismissing Kathrein's complaint.